### WEAVER v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. October 16, 1926.)

No. 4574.

**1. Poisons ⊙⟩9.**

Evidence *held* insufficient to sustain conviction for violation of the Harrison Anti-Narcotic Act under counts charging purchase and sale from unstamped package (Comp. St. §§ 6287g–6287q).

**2. Poisons ⊙⟩9.**

Count specifically charging sale of morphine, not from original stamped package, without having registered with collector and paid special tax, *held* not to state offense under Harrison-Anti Narcotic Act, § 1, as amended by Act Feb. 24, 1919, § 1006 (Comp. St. § 6287g).

In Error to the District Court of the United States for the Western District of Tennessee; J. W. Ross, Judge.

Doc Weaver was convicted of the violation of the Harrison Anti-Narcotic Act, and he brings error. Reversed, and remanded for a new trial.

W. P. Lopez, of Memphis, Tenn. (M. L. Tallant, of Memphis, Tenn., on the brief), for plaintiff in error.

W. H. Fisher, Asst. U. S. Atty., of Memphis, Tenn. (S. E. Murray, U. S. Atty., of Memphis, Tenn., on the brief), for the United States.

Before DONAHUE, MOORMAN, and KNAPPEN, Circuit Judges.

DONAHUE, Circuit Judge. [1] The plaintiff in error, Doc Weaver, was indicted upon five counts, each count charging a violation of the Harrison Anti-Narcotic Act (Comp. St. §§ 6287g–6287q). He was found guilty and sentenced on counts 1 and 3. Count 1 charged the defendant with the unlawful purchase of morphine, which was not then and there purchased in the original stamped package, and not from the original stamped package. Count 3 charged him with the sale of morphine which was not then and there sold in the original stamped package, nor from such original stamped package. On the trial of the cause evidence was introduced tending to prove that defendant was in possession of morphine, that he sold morphine to C. H. Spearman, but no evidence was offered tending to prove that the package of morphine in defendant's possession, or the package in or from which he sold the drug to Spearman, was unstamped. A package was handed to the witness, Spearman, who identified it as the package containing morphine purchased from the defendant, but the package itself was not introduced in evidence, nor does it appear from the record that it was exhibited to the jury.

It is insisted upon the part of the government that count 3 charges a sale by a person required to register, but who had not registered, with the collector of internal revenue, and paid the special tax as required by law. While there is an allegation in this count that the defendant "being a person who had not registered with the collector of internal revenue and paid the special tax, as required by law," yet this is followed by the specific charge that the defendant "did unlawfully, knowingly, willfully and feloniously sell, dispose, and distribute to C. H. Spearman a certain quantity, to wit, about 40 grains of morphine, a derivative of opium, which was not then and there sold, dispensed, and distributed in the original stamped package, nor from such an original stamped package."

Section 1 of the Harrison Anti-Narcotic Act as amended February 24, 1919, § 1006 (Comp. St. § 6287g), defines two distinct offenses: First, a sale in or from a stamped package by one who is required to register but has not registered with the collector of internal revenue and paid the special tax as required by law. Second, a purchase or sale in or from an unstamped package by any one, whether registered or not. United States v. Wong Sing, 260 U. S. 18, 21, 43 S. Ct. 7, 67 L. Ed. 105; Bellomini v. U. S. (C. C. A.) 4 F.(2d) 104.

This amendment not only designates who are required to register and pay this special tax, but also the amount of tax each must pay. Importers, manufacturers, producers, and compounders are required to pay $24 per annum, wholesale dealers $12 per annum, retail dealers $6 per annum, and physicians and other practitioners lawfully entitled to dispense, give away, or administer any of the above-mentioned drugs, $3 per annum. The amendment further defines importers, manufacturers, and dealers as follows: "Every person who imports, manufactures, compounds, or otherwise produces for sale or distribution any of the aforesaid drugs, shall be deemed to be an importer, manufacturer, or producer. Every person who sells or offers for sale any of said drugs in the original stamped packages * * * shall be deemed a wholesale dealer. Every person who sells or dispenses from original stamped packages * * * shall be deemed a retail dealer."

It would seem clear from the provisions of the amendment fixing this special tax to be paid only by importers, manufacturers, producers, wholesale dealers, retail dealers, and physicians or other practitioners authorized to dispense the drugs, when read in connection with the definition of importers, manufacturers, and dealers, that these are the only ones required to register or that are eligible to registry.

This provision of the amendment requiring registration and the payment of the special tax relates to the regulation and control of the lawful sale of morphine in or from stamped packages only, and, evidently for the purpose of making the act effective as a revenue measure, provides a penalty for any

one making a sale in or from a stamped package without having registered and paid the special tax. In this connection it is further provided that the possession of any original stamped package containing any of the aforesaid drugs by any person who has not registered and paid the special tax shall be prima facie evidence of liability to such special tax.

' This amended section, after providing how and by whom lawful sales of these drugs may be made, further provides that there shall be levied, assessed, collected and paid upon opium, coca leaves, any compounds, salts, derivatives or preparation thereof, produced in, or imported into the United States and sold or removed for consumption or sale, an internal revenue tax at the rate of one cent per ounce or any fraction thereof and that it shall be unlawful for any person to purchase, sell, dispense, or distribute any of the aforesaid drugs except in the original stamped package or from the original stamped package.

Under this provision of section 1 as amended, it is wholly immaterial whether the person accused of selling or purchasing in and from an unstamped package has or has not registered and paid the special tax, for the reason that, if the accused had registered and paid the special tax, it would be no defense to an indictment charging the purchase or sale of opium or its derivatives in or from an unstamped package. U. S. v. Wong Sing, supra; Ballestrero v. U. S. (C. C. A.) 5 F. (2d) 503.

[2] Count 3 of this indictment specifically charges the defendant with having sold 40 grains of morphine not in or from the original stamped package. Under the provision of the amended section the penalties for failing to register and pay this special tax applies only to those who sell in or from a stamped package. It is therefore apparent that count 3 does not state an offense under that provision of the amendment, since it clearly alleges that the sale was made from an unstamped package. It follows that the allegation that the defendant had not registered and paid the special tax must be treated as mere surplusage.

For the reason that there is no evidence tending to prove that the morphine purchased, as charged in the first count of the indictment or the morphine sold, as charged in the third count, was in or from an unstamped package, the judgment of the District Court is reversed, and the cause remanded for a new trial.